GEORGE MICHAEL SIMMONS, b/n/f )
GEORGE KENNETH SIMMONS, )
GEORGE KENNETH SIMMONS, )
Individually, and GEORGE KENNETH )
SIMMONS as ADMINISTRATOR of )
the ESTATE OF BESS MAI BESSON, )
                                  )
        Plaintiffs/Appellants,    )
                                  )    Appeal No.
VS.                               )    01-A-01-9607-CV-00292
                                  )
BILLY ANGLIN, STEVE ANGLIN,       )    Hickman Circuit
JOHN ANGLIN, and DOTTIE           )    No. 92-5022C
McCLEAREN, Individually and d/b/a )
Dottie's Trailer Park, a/k/a Riverview )
Mobile Home Park,                 )
                                  )
        Defendants/Appellee.      )

FILED

January 8, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CIRCUIT COURT OF HICKMAN COUNTY
AT CENTERVILLE, TENNESSEE

THE HONORABLE CORNELIA A. CLARK, JUDGE

CLIFFORD K. McGOWN, JR.
P. O. Box 26
Waverly, Tennessee
        Attorney for Plaintiffs/Appellants

N. HOUSTON PARKS
P. O. Box 1004
Columbia, Tennessee 38402

JOHN S. COLLEY
P. O. Box 1476
Columbia, Tennessee 38402
        Attorneys for Defendant/Appellee Dottie McClearen

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
LEWIS, J.
KOCH, J.

# O P I N I O N

The Circuit Court of Hickman County granted the owner of a trailer park summary judgment on claims for personal injuries and wrongful death based on a breach of the lease and an oral warranty. We affirm.

## I.

Bess Mai Besson and her son, George Michael Simmons, lived in a trailer park owned by the defendant, Dottie McClearen. George Kenneth "Buddy" Simmons, father of George Michael Simmons, also lived at the trailer, but he was not a party to the lease. On August 23, 1991 Buddy Simmons was shot and critically injured and Bess Mai Besson was killed outside the trailer by some other residents of the park and their kinsmen.

Buddy Simmons sued the assailants and Dottie McClearen on behalf of himself and his son, alleging various causes of action. The actions against Dottie McClearen -- the only ones involved in this appeal -- included common law negligence, the violation of provisions in Bess Mai Besson's lease, and the breach of an oral warranty given by Dottie McClearen. The trial judge granted summary judgment to Dottie McClearen on the claims based on the lease and the oral warranty.

## II.
### The Lease

Dottie McClearen provided low rent housing for persons in need of state assistance. In conjunction with the state program, Ms. McClearen entered into a Housing Assistance Payments Contract with the Tennessee Housing Development

Agency (THDA or PHA, Public Housing Agency). The contract with THDA obligated

Ms. McClearen to provide decent, safe, and sanitary housing in accordance with 24

C.F.R. Section 882.109. That section reads:

> Housing used in this program shall meet the Performance Requirements set forth in this section. In addition, the housing shall meet the Acceptability Criteria set forth in this section except for such variations as are proposed by the PHA and approved by HUD. Local climatic or geological conditions or local codes are examples which may justify such variations.

The two Performance Requirements and their accompanying Acceptability Criteria

relied on by the plaintiff are (c) and (k). They provide:

> (c) *Space and security* -- (1) *Performance Requirement.* The dwelling unit shall afford the Family adequate space and security.

> (2) *Acceptability criteria.* The dwelling unit shall contain a living room, kitchen area, and bathroom. The dwelling unit shall contain at least one bedroom or living/sleeping room of appropriate size for each two persons. Persons of opposite sex, other than husband and wife or very young children, shall not be required to occupy the same bedroom or living/sleeping room. Exterior doors and windows accessible from outside the unit shall be lockable.

> . . .

> (k) *Site and neighborhood* -- (1) *Performance requirement.* The site and neighborhood shall be reasonably free from disturbing noises and reverberations and other hazards to the health, safety, and general welfare of the occupants.

> (2) *Acceptability criteria.* The site and neighborhood shall not be subject to serious adverse environmental conditions, natural or manmade, such as dangerous walks, steps, instability, flooding, poor drainage, septic tank back-ups, sewage hazards or mudslides; abnormal air pollution, smoke or dust; excessive noise, vibration or vehicular traffic; excessive accumulations of trash; vermin or rodent infestation; or fire hazards.

**A. Buddy Simmons**

- 3 -

In part, the trial judge dismissed Buddy Simmons' claims based on the lease because he was not a party to the contract. We agree that he may not claim the benefit of the lease without being a party or a third party beneficiary. *See Tennessee Valley Authority v. Exxon Nuclear Co., Inc.*, 753 F.2d 493 (6th Cir. 1985). There is nothing in the record to indicate that the parties to the lease intended that Mr. Simmons should benefit from the lease terms. Therefore the lease did not create any duty running from Ms. McClearen to Mr. Simmons.

## B. George Michael Simmons

Ms. McClearen concedes that George Michael Simmons, the son of Bess Mai Besson who lived with her in the trailer, was a beneficiary of the lease contract. We are, therefore, forced to decide whether the two provisions relied on by the plaintiff provide a cause of action for the intentional killing of the child's mother under the circumstances of this case.

Housing Quality Standard (c) provides that the dwelling unit shall afford the family adequate space and security. The Acceptability Criteria refer to the interior living arrangements and provides that exterior doors and windows accessible from the outside shall be lockable. We are convinced that these provisions refer to the unit itself and do not impose a duty on the landlord to keep order in the trailer park. That duty may arise from other circumstances, *see McClung v. Delta Square*, ___ S.W.2d ___ (Tenn. 1996), but it relates to the negligence claim which the trial judge refused to dismiss.

Housing Quality Standard (k) does refer to the site and the neighborhood; it provides that the dwelling unit shall be located in an area reasonably free from disturbing noises and reverberation and <u>other hazards</u> to the health, safety, and general welfare of the tenants. The Acceptability Criteria under this standard

refer to adverse environmental conditions which may be generalized as fire hazards, floods, air quality, sewage, and dangerous construction defects.

We are persuaded that this standard refers to the physical environment of the site and neighborhood and that the hazards to health and safety mentioned in the standard do not refer to dangerous individuals who may reside on or come about the premises.

Regulations should not be subjected to a forced or subtle construction which would extend or limit their meaning. *Roseman v. Roseman*, 890 S.W.2d 27 (Tenn. 1994). Courts have not construed the Public Housing Act in a manner that allows inferences of private rights from the Act's general words. *Stevenson v. San Francisco Housing Authority*, 24 Cal. App. 4th 269, 29 Cal. Rept. 2d 398 (Cal. App. 1994); *Cobos v. Dona Ana County Housing Authority*, 908 P.2d 250 (N.M. App. 1995). Therefore, the cited portions of the Housing Act do not create a duty on the part of a landlord to keep the neighborhood crime-free.

### III.
### Breach of Warranty

To suppport his warranty claim Buddy Simmons cites a conversation he had with Ms. McClearen in which she stated that she "tried to keep her park straight and tried to keep trouble down," and that she was "going to keep it as safe as possible."

We hold that as a matter of law these statements, made to a person not a party to the lease, did not amount to a warranty. A warranty ordinarily arises in connection with a transaction which connects the warrantor and warrantee in some sort of legal relationship, whether direct or remote. (See Tenn. Code Ann. § 29-34-

104 which abolishes the requirement of privity in most actions involving personal injuries and property damage.)  As to buyers and sellers, "There must be some affirmation of fact or promise by the seller, the tendency of which induced the buyer to purchase the machine in order to constitute him a warrantor."  *Wallace v. McCampbell*, 178 Tenn. 224, 156 S.W.2d 442 at 445 (Tenn. 1941).

There was no legal relationship between Ms. McClearen and Buddy Simmons -- either before or after the conversation on which he relies.  Therefore, we hold that her words, even if construed as promises, would not impose any legal obligation on her with respect to Mr. Simmons.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Hickman County.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE